**LANPHERE & URBANIAK, the Law Firm of, Gregory S. Lanphere, Joel E. Urbaniak, individually and as partners thereof; Frank Mutchler, as Director of Turning Point Drug and Alcohol Treatment Center, Plaintiffs-Appellants,**

v.

**COLORADO, STATE OF; Gale A. Norton, Attorney General for the State of Colorado, in her official capacity only; Roy Romer, Governor for the State of Colorado, in his official capacity only, Defendants-Appellees.**

No. 92–1363.

United States Court of Appeals, Tenth Circuit.

April 19, 1994.

Rehearing Denied July 1, 1994.

---

**1510**

Michael W. Gross (Arthur M. Schwartz, of Arthur M. Schwartz, P.C., Denver, CO, with him on the briefs), of Arthur M. Schwartz, P.C., Denver, CO, for plaintiffs-appellants.

Mark Widmann Gerganoff (Gale A. Norton, Atty. Gen.; Raymond T. Slaughter, Chief Deputy Atty. Gen.; Timothy M. Tymkovich, Sol. Gen.; Maurice G. Knaizer, Deputy Atty. Gen.; Larry A. Williams, First Asst. Atty. Gen., Denver, CO, with him on the brief), Asst. Atty. Gen., Denver, CO, for defendants-appellees.

Before TACHA, SETH, and ALDISERT,[*] Circuit Judges.

TACHA, Circuit Judge.

Plaintiffs brought suit against the State of Colorado under 42 U.S.C. § 1983 claiming a violation of their First and Fourteenth Amendment free speech rights and requesting injunctive relief. Plaintiffs' claims are the result of a Colorado state statute limiting public access to criminal justice and official action records containing individual names, addresses, and telephone numbers where access is sought for the purpose of directly soliciting business for pecuniary gain. The district court granted summary judgment for defendant. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

The facts relevant to this appeal are not in dispute. Plaintiffs Gregory S. Lanphere and Joel E. Urbaniak are partners in the law firm of Lanphere & Urbaniak in Colorado Springs, Colorado. The firm handles misdemeanor traffic cases and cases involving charges of driving under the influence of alcohol (DUI). Plaintiff Frank Mutchler is the director of the Turning Point Drug and Alcohol Treatment Center, also located in Colorado Springs. Prior to June 1992, plaintiffs obtained names and addresses of individuals facing prosecution for various traffic violations and DUI from criminal justice and official action records[1] for the purpose of engaging in direct mail solicitation and advertising.

On April 2, 1992, the Colorado legislature passed the following legislative provision:

24-72-305.5. Access to records—denial by custodian—use of records to obtain information for solicitation. Records of offi-

---

[*] The Honorable Ruggero J. Aldisert, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

1. We use the terms "criminal justice records" and records of "official action" as they are defined by Colorado statute:

> (4) "Criminal justice records" means all books, papers, cards, photographs, tapes, recordings, or other documentary materials, regardless of form or characteristics, which are made, maintained, or kept by any criminal justice agency [also defined by statute as shown below] in the state for use in the exercise of functions required or authorized by law or administrative rule.
>
> . . . .
>
> (7) "Official action" means an arrest; indictment; charging by information; disposition; pretrial or posttrial release from custody;

judicial determination of mental or physical condition; decision to grant, order, or terminate probation, parole, or participation in correctional or rehabilitative programs; and any decision to formally discipline, reclassify, or relocate any person under criminal sentence. Colo.Rev.Stat. § 24-72-302 (1988). "Criminal justice agency" is defined as follows:

> (3) "Criminal justice agency" means any court with criminal jurisdiction and any agency of the state[, city, or county] which performs any activity directly relating to the detection or investigation of crime; the apprehension, pretrial release, posttrial release, prosecution, correctional supervision, rehabilitation, evaluation, or treatment of accused persons or criminal offenders; or criminal identification activities or the collection, storage, or dissemination of arrest and criminal records information. *Id.*

cial actions and criminal justice records and the names, addresses, telephone numbers, and other information in such records shall not be used by any person for the purpose of soliciting business for pecuniary gain. The official custodian shall deny any person access to records of official actions and criminal justice records unless such person signs a statement which affirms that such records shall not be used for the direct solicitation of business for pecuniary gain.

Colo.Rev.Stat. § 24–72–305.5. Since the passage of this section, plaintiffs have been denied access to criminal justice and official action records (collectively referred to hereinafter as "criminal justice records"). They refuse to sign the statement required under § 24–72–305.5 because they wish to use the names and addresses in such records to engage in direct mail advertising "for the purpose of soliciting business for pecuniary gain."

Plaintiffs brought suit against the State of Colorado in the United States District Court for the District of Colorado alleging a violation of their First and Fourteenth Amendment right to free speech. The district court granted summary judgment for defendant holding that there is no right of access to criminal justice records and that, even if the First Amendment is implicated, the statute at issue survives First Amendment review. Plaintiffs now appeal.

## II. Plaintiffs' First Amendment Claim

■ We review a district court's grant of summary judgment de novo, employing the same standard employed by the district court. *Adolph Coors Co. v. Brady,* 944 F.2d 1543, 1546 (10th Cir.1991). "[S]ummary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Id.* Because the essential facts are undisputed in this case, we face exclusively a question of law.

Plaintiffs assert that § 24–72–305.5 is an impermissible limitation on their First Amendment free speech rights. They argue that, because access to records is conditioned upon whether the resulting speech is to be commercial in nature, the regulation is content-based and should be subject to review under a First Amendment framework. Under this framework, plaintiffs argue that § 24–72–305.5 is unconstitutional.

The State of Colorado, on the other hand, contends that this is not a free speech case at all, but rather a simple access-to-records case. Under this framework, the First Amendment is not implicated. The state has wide discretion in determining access to government records such as those sought by plaintiffs here and, the State of Colorado argues, § 24–72–305.5 is a proper exercise of that discretion. The case is not as clear-cut as either side urges.

### A. Access to government records

Courts have historically recognized a common law right, though not an absolute right, of access to government records, including judicial records. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597–98, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978); *United States v. Hickey,* 767 F.2d 705, 708 (10th Cir.), *cert. denied sub nom., Hopkinson v. United States,* 474 U.S. 1022, 106 S.Ct. 576, 88 L.Ed.2d 559 (1985). This "right is an important aspect of the overriding concern with preserving the integrity of the law enforcement and judicial processes." *Id.* However, in this case, the common law has been supplanted by the statutory scheme outlined in Colo.Rev.Stat. §§ 24–72–301 through 24–72–308, which includes the limiting provision challenged by plaintiffs.

■ The question, then, is whether there is an overriding constitutional right of access to government records. The State of Colorado is correct in its assertion that the general answer to this question is that there is no constitutional right, and specifically no First Amendment right, of access to government records. *See Houchins v. KQED, Inc.,* 438 U.S. 1, 9, 98 S.Ct. 2588, 2593, 57 L.Ed.2d 553 (1978) (pointing out that the Court "has never intimated a First Amendment guarantee of a right of access to all sources of information within government control"); *Hickey,* 767 F.2d at 709. This principle encompasses situations in which members of the general

public and the press seek access to criminal justice records. *See Nixon,* 435 U.S. at 609, 98 S.Ct. at 1317–18; *Hickey,* 767 F.2d at 709. Any reference in Supreme Court precedent to constitutional entitlement of the public to information held by the government "mean[s] no more than that the government cannot restrain communication of whatever information [is in fact acquired]." *Houchins,* 438 U.S. at 10, 98 S.Ct. at 2594. *Houchins* makes clear the reasoning behind this rule. "The Constitution ... establishes the contest, not its resolution. [A legislature] may provide a resolution ... through carefully drawn legislation. For the rest, we must rely, as so often in our system we must, on the tug and pull of the political forces in American society." *Id.* at 14–15, 98 S.Ct. at 2596–97 (quoting Hon. Potter Stewart, *Or of the Press,* 26 Hastings L.J. 631, 636 (1975)).

■ Plaintiffs suggest, however, that we derive a First Amendment right of access from another line of Supreme Court precedent. In several cases, the Court has held that in certain circumstances the First Amendment is implicated in relation to the Sixth Amendment right to a fair and public trial. *See Press–Enterprise Co. v. Superior Court* (Press–Enterprise II), 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (finding a right of access to pre-trial criminal proceedings as conducted in California); *Press–Enterprise v. Superior Court* (Press–Enterprise I), 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (finding a right of public access to a jury voir dire proceeding in a criminal trial); *Globe Newspapers Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (finding a right of public access to a criminal trial); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (also involving public access to a criminal trial). Under this precedent, however, a First Amendment right of access inheres only in limited situations where "a tradition of accessibility implies the favorable judgment of experience[ ]," *Press–Enterprise II,* 478 U.S. at 8, 106 S.Ct. at 2740 (internal quotations omitted), and where "public access plays a significant positive role in the functioning of the particular process in question." *Id.* To hold that these principles provide for access to

any criminal justice record which happens to contain a defendant's address and/or phone number and which is sought for that reason alone would stretch them well beyond their current bounds. *See Calder v. IRS,* 890 F.2d 781 (5th Cir.1989) (holding that the First Amendment right of access to certain criminal proceedings does not extend to IRS records of its investigation of Al Capone sought by a university professor who wished to use the records in his research). We therefore decline to so hold.

The State of Colorado argues that this is where our inquiry ends. In light of the specific statutory scheme involved in this case, we disagree.

## B. First Amendment application

We begin here by noting once again that there is no general First Amendment right in the public to access criminal justice records. However, though the Colorado Legislature theoretically has the power to deny access entirely, the First Amendment can be implicated by the line drawing in Colorado's access-to-records statute. As the Supreme Court said in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), a statute may not be "saved from constitutional infirmity on the ground that [what is involved is] not [plaintiffs'] 'right' but merely a 'privilege.' It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing conditions upon a benefit or a privilege." *Id.* at 404, 83 S.Ct. at 1794; *see also City of Cincinnati v. Discovery Network, Inc.,* —— U.S. ——, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (holding that, even assuming the city of Cincinnati could entirely prohibit the use of newsracks on public property, as long as they are permitted, a content-based regulation of newsracks is subject to First Amendment scrutiny); *Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987) (despite the government's broad power to set tax policy, holding unconstitutional a state sales tax scheme conditioning exemption on publication content).

■ In this case, a particular facet of Colorado's statutory scheme does indeed evoke

the First Amendment. Although criminal justice records themselves do not constitute speech, the Colorado Legislature has drawn a regulatory line based on the speech use of such records. Section 24–72–305.5 disallows the release of records to those wishing to use them for commercial speech, while allowing the release of the same records to those having a noncommercial purpose. Because commercial speech is protected under the First Amendment (though it is accorded lesser protection than "core" First Amendment speech), *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 761–62, 96 S.Ct. 1817, 1825–26, 48 L.Ed.2d 346 (1976); *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 560–566, 100 S.Ct. 2343, 2348–51, 65 L.Ed.2d 341 (1980), and because such speech includes direct mail solicitation, *Shapero v. Kentucky Bar Ass'n,* 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988), what we have in the end is a content-based restriction on protected speech. *See Consolidated Edison Co. v. Public Serv. Comm'n,* 447 U.S. 530, 537–38, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980) ("The First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic.").

## C. Review under *Central Hudson*

Having determined that § 24–72–305.5 does in fact implicate the First Amendment [2], *accord Moore v. Morales,* 843 F.Supp. 1124, 1130 (S.D.Tex.1994) (holding that a Texas statute limiting access to accident reports was subject to First Amendment review), we proceed to review it in that light. Because the statute disadvantages commercial speech, our review is conducted subject to the lesser First Amendment protection afforded such speech under the four-part test of *Central Hudson:*

[1] ] At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. [2] ] Next, we ask whether the asserted governmental interest is substantial. [3] ] If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and [4] ]

2. One additional point, important to constitutional line drawing, bears brief mention under the facts of this case. It could be argued that what we have here is not a case of a government obstruction to speech but rather a government refusal to aid in certain speech. Thus, the case might appear to resemble *Rust v. Sullivan,* 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991).

In *Rust,* the Supreme Court upheld a regulation prohibiting workers in projects receiving funding under Title X of the Public Health Service Act from engaging in abortion counseling, referral, and activities advocating abortion as a method of family planning. In rejecting plaintiffs' First Amendment challenge, the Court said that "[t]o hold that the Government unconstitutionally discriminates on the basis of viewpoint when it chooses to fund a program dedicated to advance certain permissible goals, because the program in advancing these goals necessarily discourages alternate goals, would render numerous government programs constitutionally suspect." *Id.* 500 U.S. at 194, 111 S.Ct. at 1773. In *Lyng v. International Union,* 485 U.S. 360, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988) (upholding food stamp statute precluding a household from becoming eligible for food stamps if a member of the household is on strike), the Court said further that "even where the Constitution prohibits coer-

cive governmental interference with specific individual rights, it does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom." *Id.* at 369, 108 S.Ct. at 1191 (internal quotations omitted); *see also Regan v. Taxation With Representation of Washington,* 461 U.S. 540, 543–547, 103 S.Ct. 1997, 1999–01, 76 L.Ed.2d 129 (1983) (upholding tax exemption for nonprofit organizations conditioned on an organization's not engaging in significant lobbying activities).

In reality, however, this case differs significantly from *Rust* and related cases. With Colo. Rev.Stat. § 24–72–305.5, we have less an instance of "the Government refusing to fund [or in this case otherwise aid in] activities, including speech, which are specifically excluded from the scope of [a] project," *Rust,* 500 U.S. at 194–95, 111 S.Ct. at 1773, and more a "case of a general law singling out a disfavored group on the basis of speech content," *id.* The Colorado Legislature has, in the face of a long common law history of presumed access to court records and a larger statutory scheme that allows for such access, singled out a subgroup for denial of access based on speech content. Section 24–72–305.5 more resembles a government erected obstruction to speech than a legislative decision not to encourage certain speech in the process of pursuing other goals.

whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 566, 100 S.Ct. at 2351; *see Adolph Coors Co. v. Brady,* 944 F.2d 1543, 1546–47 (10th Cir.1991).

■ First, the speech affected under § 24–72–305.5 comes within the protection of the First Amendment because the direct mail advertising in this case concerns lawful activity and because all commercial solicitations made possible by access to records, and not merely misleading solicitations, are affected. Further, the State does not allege that plaintiffs' particular solicitations would necessarily be misleading. Thus we move on to prong two of the *Central Hudson* test.

■ Under prong two, the substantial interest asserted by the State before the district court was the need to protect the privacy of those charged with misdemeanor traffic offenses and DUI. In *Shapero v. Kentucky Bar Ass'n,* 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988), the Supreme Court found no sufficient privacy interest in a ban on targeted direct mail solicitation. *Id.* at 476, 108 S.Ct. at 1923. This finding, however, was based partially on the nature of a solicitation ban which suppresses speech based on information already in the possession of solicitors. The Court said that "[t]he [privacy] invasion, if any, occurs when the lawyer discovers the recipient's legal affairs, not when he confronts the recipient with the discovery." *Id.* The case at issue involves just that sort of invasion. Solicitors are attempting to discover individuals' legal affairs [3] where such discovery might be most offensive—where it is by those whose purpose it is to use the information for pecuniary gain.

Plaintiffs contend that the State's asserted privacy interest is only chimerical because the identity of those charged may be available through other sources such as local newspapers. However, even if the information is available to some degree through other sources, the state's interest in not aiding in the dissemination of the information for commercial purposes remains. We presume that plaintiffs would not be involved in this litigation if the information they seek is so widely available that the privacy of the accused is no longer at issue. Thus, in this case we agree with the State that privacy considerations constitute a substantial state interest.

Plaintiffs further contend, however, that the privacy interest asserted by the State is merely a creation for this litigation. In support of this contention plaintiffs cite the very limited legislative history of the statute. Plaintiffs point out that State Senator Wells, in introducing the amendment that became § 24–72–305.5, said: "We were not [providing access to records] to ... provide a client base ... for people to go out and solicit new business and ... so what this does is it ... says that those records are still open but are not to be used in direct solicitation for pecuniary gain...." Tape recording of Colorado Senate debate on amendment to H.B. 1078. This quotation is part of a statement consisting of only 22 transcript lines. It is essentially a summary description of what the amendment does. It is not a definitive statement on the State's interest in § 24–72–305.5 and is not inconsistent with the State's asserted interest in protecting privacy.

■ The statement by Senator Wells does, however, suggest a further substantial state interest in this case—lessening the danger of solicitor abuse and, relatedly, maintaining public confidence in our system of justice.[4] These are also substantial state interests. *See Shapero,* 486 U.S. at 476, 108 S.Ct. at 1923 (commenting that the state can regulate based on the potential abuses of direct mail advertising, though not in the form of a total ban on that mode of speech); *In re R.M.J.,* 455 U.S. 191, 202, 102 S.Ct. 929, 937, 71

---

**3.** It is important to remember that the information at issue concerns not convicted individuals but merely accused individuals. With respect to accused individuals, the analysis changes where the right of access to trial proceedings derived from the First and/or Sixth amendments is implicated. As we have already ruled in Section II.A.

above, the constitutional right of access to trial proceedings is not a consideration in this case.

**4.** The State's concern over misconduct and decreased confidence in the justice system applies whether the solicitor for pecuniary gain is an attorney or a non-attorney.

L.Ed.2d 64 (1982) (discussing state interest in regulating demonstrably *or potentially* misleading advertising); *In re Anis*, 126 N.J. 448, 599 A.2d 1265, 1269–71 (1992) (discussing some of the problems associated with attorney direct mail solicitation), *cert. denied*, —— U.S. ——, 112 S.Ct. 2303, 119 L.Ed.2d 225 (1992); *see also Shapero*, 486 U.S. at 480–491, 108 S.Ct. at 1925–31 (O'Connor, J., joined by Rehnquist, C.J. and Scalia, J., dissenting).

■ Turning to the third prong of *Central Hudson*, we have no trouble finding that § 24–72–305.5 advances the State's interests in a reasonably direct way. The State's interest in protecting privacy is directly advanced when the State no longer allows access to the names and addresses of those charged with misdemeanor traffic violations and DUI. Further, refusing access to such information reasonably directly advances the State's interest in lessening the danger of overreaching by solicitors where potential solicitation recipients may be particularly vulnerable.

■ It is under the fourth prong of *Central Hudson* that we find our primary inquiry. This prong, which asks "whether [the regulation] is not more extensive than is necessary to serve [the state] interest," *Central Hudson*, 447 U.S. at 566, 100 S.Ct. at 2351, is not a "least restrictive means test." *Board of Trustees of State Univ. v. Fox*, 492 U.S. 469, 476–481, 109 S.Ct. 3028, 3032–35, 106 L.Ed.2d 388 (1989). Instead, we must determine whether the regulation constitutes a "reasonable fit" in light of the interest asserted by the State. *Id.*

We have already determined above that the State has substantial interests in this case and that § 24–72–305.5 advances these interests in a reasonably direct way. Balancing these determinations against the effect of § 24–72–305.5 on commercial speech, does the statute effect a "reasonable fit?" We look first to *Shapero* in making this determination.

In *Shapero* the Supreme Court struck down a Kentucky rule prohibiting attorney direct mail solicitation where solicitation was precipitated by a particular event and directed at a party affected by that event. The Court focused on the fact that the ban was designed to completely cut off such solicitation when lesser measures, such as previewing individual mailings to ensure that they are not misleading and do not exert undue influence, were more appropriate in light of the value of commercial speech. *Id.* at 476–78, 109 S.Ct. at 3032–33. The Court distinguished *Shapero* from *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 98 S.Ct. 1925, 56 L.Ed.2d 444 (1978) (upholding a blanket ban on in-person solicitation by attorneys), noting that direct mail solicitation "poses much less a risk of overreaching or undue influence than does in-person solicitation". *Shapero*, 486 U.S. at 472–476, 108 S.Ct. at 1921–23 (internal quotations omitted).

Though this is a direct mail solicitation case, it is not *Shapero*. Significant distinguishing elements here tip the balance in favor of the State despite the lower risk of overreaching with direct mail versus in-person solicitation. First, in this case we have the added interest in protecting privacy, not present in *Shapero* (where solicitors presumably already possessed the information necessary to solicit). More importantly, the State of Colorado has not completely banned direct mail solicitation for pecuniary gain of any particular group. The State has instead established an indirect barrier to commercial speech by not making certain records available for that purpose.[5] As a result, the

---

5. The fact that § 24–72–305.5 only indirectly burdens speech does not render the First Amendment inapplicable. *See Sherbert v. Verner*, 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963) (striking down state unemployment regulation that had the effect of denying benefits to members of a certain religion saying that "[i]f the purpose or effect of a law is to ... discriminate ..., that law is constitutionally invalid even though the burden may be characterized as being only indirect"); *see also Regan v. Time*, 468 U.S. 641, 648, 104 S.Ct. 3262, 3266, 82 L.Ed.2d 487 (1984) (holding that, where a regulation is not content-neutral, even if it would otherwise qualify as a restriction merely on the time, place, or manner of speech—which can be seen as an indirect restriction—it does not qualify for more lenient time, place, and manner review); *City of Cincinnati v. Discovery Network, Inc.*, —— U.S. ——, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (holding unconstitutional a regulation prohibiting street newsracks for commercial handbills

"reasonable fit" test of *Fox* is more easily satisfied. *See Shapero*, 486 U.S. at 476, 108 S.Ct. at 1923 (stating that the risk of abuse does not justify a *total ban* on direct mail solicitation in part because "[t]he State can regulate such abuses through far less restrictive ... means"); *see also Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 310, 102 S.Ct. 434, 444, 70 L.Ed.2d 492 (1981) (White, J., dissenting). In addition, in this case the State is not required to provide access to criminal justice records at all. While this does not render the First Amendment inapplicable (as discussed above), it is relevant to determining whether the State's regulation is a reasonable fit. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32, 104 S.Ct. 2199, 2207, 81 L.Ed.2d 17 (1984) (stating that because access to information in the discovery process is "a matter of legislative grace," some continued control over that information by the court "does not raise the same specter of government censorship that such control might [otherwise] suggest").

For these reasons, this case stands in contrast to *Shapero*. Section 24–72–305.5 constitutes a "reasonable fit" in advancing the State of Colorado's substantial interest in protecting privacy and avoiding abuse in direct mail solicitation for pecuniary gain.

### III. Conclusion

We find that, though Colo.Rev.Stat. § 24–72–305.5 is a content-based restriction on commercial speech, it is valid under the *Central Hudson* framework. The district court's grant of summary judgment for defendant is **AFFIRMED.**

ALDISERT, Circuit Judge, dissenting.

I would reverse the judgment of the district court and hold that the Colorado statute offends the First Amendment right of access to criminal proceedings. I believe that this case is governed by the teachings of *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1 (1986) (hereinafter *Press–Enterprise II* ):

In cases dealing with the claim of a First Amendment right of access to criminal proceedings, our decisions have emphasized two complementary considerations. First, because a " 'tradition of accessibility implies the favorable judgment of experience,' " *Globe Newspaper [Co. v. Superior Court]*, 457 U.S. [596], at 605[, 102 S.Ct. 2613, at 2619, 73 L.Ed.2d 248 (1982) ] (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 589[, 100 S.Ct. 2814, 65 L.Ed.2d 973] (1980) (BRENNAN, J., concurring in judgment)), we have considered whether the place and process have historically been open to the press and general public....

Second, ... the Court has traditionally considered whether public access plays a significant positive role in the functioning of the particular process in question.

Although it is true that the "Court has never intimated a First Amendment guarantee of a right of access to all sources of information within government control," *Houchins v. KQED, Inc.*, 438 U.S. 1, 9, 98 S.Ct. 2588, 2593–94, 57 L.Ed.2d 553 (1978) (Burger, C.J., plurality opinion), when it comes to criminal proceedings, "[i]f the particular proceeding in question passes ... tests of experience and logic, a qualified First Amendment right of public access attaches." *Press–Enterprise II*, 478 U.S. at 9, 106 S.Ct. at 2740.

In order to determine if the Colorado Criminal Justice Records Act, Colo.Rev.Stat. § 24–72–305.5, is constitutional, we must examine the records to which it bars access under a three-part inquiry: (a) whether "criminal justice records" and "official actions" are part of "criminal proceedings," (b) whether national experience provides for public access to such records and (c) whether access by the public plays a significantly

---

while continuing to allow them for other publications such as ordinary newspapers).

We are mindful of the Supreme Court's admonition in *Zemel v. Rusk*, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965) (rejecting First Amendment challenge to a blanket ban on travel to Cuba), that "there are few restrictions on

action which could not be clothed by ingenious argument in the garb of decreased data flow." *Id.* at 16–17, 85 S.Ct. at 1280–81. However, in this case, unlike *Zemel*, the information restriction is expressly based on the content of the end expression.

positive role in the functioning of the process in question. *See Press–Enterprise II,* 478 U.S. at 8, 106 S.Ct. at 2740; *Globe Newspaper,* 457 U.S. at 605–06, 102 S.Ct. at 2619–20.

In my view, we must answer all three questions in the affirmative.

### I.

To ask the first question is also to answer it. The Colorado statute clearly precludes access to "[r]ecords of official actions and criminal justice records" to certain individuals. Colo.Rev.Stat. § 24–72–305.5. "Criminal justice records" clearly refer to the records of criminal prosecutions. The statute's definition of "official action" covers all aspects of criminal proceedings:

> "Official action" means an arrest; indictment; charging by information; disposition; pretrial or posttrial release from custody; judicial determination of mental or physical condition; decision to grant, order, or terminate probation, parole, or participation in correctional or rehabilitative programs; and any decision to formally discipline, reclassify or relocate any person under criminal sentence."

Colo.Rev.Stat. § 24–72–302(7).

There can be no question that Colo.Rev. Stat. § 24–72–305.5 relates to the records of criminal proceedings.

### II.

We must next examine the experience prong of our three-part inquiry. In *El Vocero De Puerto Rico v. Puerto Rico,* — U.S. —, —, 113 S.Ct. 2004, 2006, 124 L.Ed.2d 60 (1993), the Court held that "the 'experience' test of *Globe Newspaper* does not look to the particular practice of any one jurisdiction, but instead 'to the experience in that type or kind of hearing throughout the United States.'" (citing *Rivera–Puig v. Garcia–Rosario,* 983 F.2d 311, 323 (1st Cir.1992)). In *Press–Enterprise II,* 478 U.S. at 11, 106 S.Ct. at 2741–42, the Court established that "[o]pen preliminary hearings ... have been accorded 'the favorable judgment of experience.'" (citing *Globe Newspaper,* 457 U.S. at 605, 102 S.Ct. at 2619). The records at issue here, by and large, relate to prelimi-

nary proceedings. Furthermore, this court "acknowledged the axiom that a common law right exists to inspect and copy judicial records." *United States v. Hickey,* 767 F.2d 705, 708 (10th Cir.), *cert. denied sub nom. Hopkinson v. United States,* 474 U.S. 1022, 106 S.Ct. 576, 88 L.Ed.2d 559 (1985). As Colorado notes in its brief, "prior to the passage of the Colorado Criminal Justice Act records were released pursuant to a common law ... obligation to do so." Brief of Appellee at 7 n. 3. Although the Colorado experience is not dispositive, it is indicative of the "national tradition" of access to these records. *See United States v. Suarez,* 880 F.2d 626, 630 (2d Cir.1989) (recognizing a presumption of public access to a criminal trial and to documents filed in connection with criminal proceedings). Accordingly, the right of access contention meets the test of "experience."

### III.

We must now inquire into the last prong: What value, if any, does public access to the State's criminal justice records add to the judicial process? Whether access is available to Appellants through a qualified First Amendment right depends on "whether public access ... plays a particularly significant positive role in the actual functioning of the process." *Press–Enterprise II,* 478 U.S. at 11, 106 S.Ct. at 2742.

In general, "the open processes of justice serve an important prophylactic purpose, providing an outlet for community concern, hostility, and emotion." *Richmond Newspapers,* 448 U.S. at 571, 100 S.Ct. at 2824.

### A.

Here, however, only a specific sector of society has been denied access to Colorado's criminal justice records. One Appellant, Lanphere & Urbaniak, is a Colorado Springs law firm, which handles many cases involving misdemeanor traffic offenses and driving under the influence of alcohol cases. The remaining Appellant, Frank Mutchler, directs the Turning Point Drug and Alcohol Treatment Center, also located in Colorado Springs. Prior to June 1992, the effective

date of the statute, Appellants used El Paso County Court records to obtain the names and addresses of individuals being prosecuted for driving under the influence and other traffic violations. The information was used for direct mail solicitation and advertising. The statute now prohibits the use of El Paso County Court records for "the purpose of soliciting business for pecuniary gain." Colo. Rev.Stat. § 24–72–305.5.

Colorado argues that Appellants' solicitations for pecuniary gain provide no significant value to the court processes.

### B.

Notwithstanding the State's attempt to characterize the Appellants' behavior as unsavory, direct mail advertising by lawyers is a constitutionally protected activity. *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 472, 108 S.Ct. 1916, 1921, 100 L.Ed.2d 475 (1988) ("Lawyer advertising is in the category of constitutionally protected commercial speech."). No suggestion has been made that solicitation of candidates for alcohol rehabilitation is prohibited. We must look beyond any personal distaste for direct solicitation and, instead, look to the value these professionals provide to our legal system.

We have long recognized the value of legal representation in criminal proceedings. *See Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963) ("The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours."). Direct solicitation for clients may result in legal representation for individuals charged with offenses that may place liberty and property interests at risk, including the possible loss of automobile operation privileges. I believe that this plays a particularly significant positive role in the actual functioning of the judicial process. In addition, the attorney Appellants argue that direct mail solicitation serves an educational purpose because it informs members of the public of their rights in traffic court proceedings.

Lawyers are not the only professionals prevented from soliciting. Health care providers such as Mr. Mutchler may not solicit clients for their treatment centers. Treatment of alcohol abuse benefits the justice system by attempting to limit the number of repeat offenders.

Therefore, not only does public access provide significant value in this instance, but it is value that goes to the very heart of our judicial system.

### IV.

Under the Court's three-pronged analysis, a qualified First Amendment right of access attaches to the criminal justice records regulated by the state of Colorado. Therefore, in order to close those records to all or part of the public, there must be a compelling state interest in closure and a carefully tailored resolution of the conflict between that interest and First Amendment concerns. *Globe Newspaper*, 457 U.S. at 606–07, 102 S.Ct. at 2619–20.

The State suggests at least three compelling interests in closing the criminal justice records to the Appellants: (1) affording the individuals named in the records greater control over the information the State has concerning them, thereby preserving the right to privacy, (2) adhering to the original, intended uses of the records, namely the administration of justice and law enforcement and (3) eliminating the offensiveness of seeking monetary gain from another's misfortune with the State's assistance.

In the context of First Amendment analysis, I find none of these arguments persuasive. Upon close scrutiny the State's interests are far from "compelling."

### A.

Colorado concedes that all of the information denied to Appellants by the statute is accessible to them through the El Paso County News, the official weekly newspaper for El Paso County, Colorado. The State's interest in preserving the right of privacy of those arrested for driving under the influence is not so compelling that they have attempted to prohibit the publication of the names of these individuals in the El Paso County News. No citation is necessary to indicate that any attempt to prevent publica-

tion of this information by the news media would be a violation of prior restraint precepts of the First Amendment. The statute is far too underinclusive to protect the privacy interest of those arrested for this offense.

### B.

Colorado contends that by precluding the dissemination of names and addresses, fealty is being paid to the "original, intended uses of the records, namely, the administration of justice and law enforcement." Brief of Appellee at 29–30. I believe that this is an incomplete statement of the purpose of public records. As this court has previously made clear, the right to inspect and copy judicial records "is an important aspect of the overriding concern with preserving the integrity of the law enforcement and the judicial processes." *Hickey*, 767 F.2d at 708 (citing *United States v. Hubbard*, 650 F.2d 293, 315 (D.C.Cir.1980)). To be sure, the interests of law enforcement must always be paramount, but those interests may never be interpreted as superior to or towering over the rights of those accused of a crime.

### C.

In describing its third compelling interest in defense of the statute, Colorado makes the following engrossing statement:

Eliminating the offensiveness of seeking monetary gain from another's misfortune with the State's assistance. It is the State's function and duty to administer justice and enforce the law. It is not the State's function or duty to provide a client base to private organizations seeking monetary gain.

Brief of Appellee at 30.

Even if the solicitation of clients by lawyers or alcoholic rehabilitation programs, a constitutionally protected activity, is to be considered offensive conduct, the offensive nature of such activities has been found by the Supreme Court to be an insufficiently compelling reason to abridge the public's First Amendment rights. See *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 71, 103 S.Ct. 2875, 2882–83, 77 L.Ed.2d 469 (1983) ("At least where obscenity is not in-

volved, we have consistently held that the fact that protected speech may be offensive to some does not justify its suppression.") (quoting *Carey v. Population Serv. Int'l*, 431 U.S. 678, 701, 97 S.Ct. 2010, 2024, 52 L.Ed.2d 675 (1977)).

In a First Amendment analysis, the issue is not whether Appellants have access to a client base for monetary gain, but whether the State has the power to place off limits to certain sectors of society records which hitherto have been open to all. As I read the teachings of the Supreme Court, so long as direct mail solicitation is "not false or deceptive and does not concern unlawful activities," *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638, 105 S.Ct. 2265, 2275, 85 L.Ed.2d 652 (1985), it will be permitted and that the First Amendment right of public access to criminal proceedings applies to the public as a whole, without regard to the lawful use of the information gained through that access. See *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984) ("The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurances that established procedures are being followed and that deviations will become known."). It would be disingenuous to recognize as a compelling state interest the indirect regulation of that which the State clearly cannot directly regulate. See *Edenfield v. Fane*, —— U.S. ——, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) (holding that Florida's ban on in-person solicitation by Certified Public Accountants violated the First Amendment); *see also Zauderer*, 471 U.S. at 638, 105 S.Ct. at 2275.

Thus, the issue is not whether Colorado is obliged to provide a client base to the Appellants or required to furnish a source of news to El Paso County News. Rather, the question is to what extent may it deny public access, irrespective of the motivation for the access, so long as the motivation is not for an unlawful purpose. In my view, a desire for pecuniary gain in the world's strongest capitalistic society operating under a democratic

political system has not yet been declared unlawful, offensive or unconstitutional.

## V.

Therefore, I believe that Appellants possess a qualified First Amendment right of access to the records, which has been denied them by the Colorado statute. I would hold that the statute is unconstitutional and would reverse the judgment of the district court. Accordingly, I dissent.