106 F.3d 401
 25 Media L. Rep. 1442
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NORTHERN KENTUCKY CHIROPRACTIC, A Partnership Consisting of
Joseph Scott and Bryan Johnson, D.C., Plaintiff-Appellee,
v.
Steve RAMEY, Defendant-Appellant.
 No. 95-5645.
 United States Court of Appeals, Sixth Circuit.
 Jan. 29, 1997.
 
 On Appeal from the United States District Court for the Eastern District of Kentucky, No. 94-00385; Henry R. Wilhoit Jr., Judge.
 E.D.Ky.
 VACATED.
 Before: GUY, NELSON, and BATCHELDER, Circuit Judges
 BATCHELDER, Circuit Judge.
 
 
 1
 Defendant Steve Ramey appeals from the district court's order enjoining him, as the custodian of records for the Lexington-Fayette Urban County Government ("LFUCG"), from enforcing recently enacted legislation which could be used to keep plaintiff Northern Kentucky Chiropractic ("NKC") from obtaining automobile accident reports to be used for purposes of commercial solicitation of business. Because we conclude that the district court abused its discretion in issuing the injunction, we DISSOLVE the injunction, and REMAND to the district court with instructions to conduct further proceedings not inconsistent with this order.
 
 I.
 
 2
 There are few material background facts. On June 19, 1976, the Kentucky General Assembly enacted the Open Records Act. KY.REV.STAT.ANN. §§ 61.870-884 (Banks-Baldwin 1976) ("the Act"). The Act enabled individuals to inspect any "public record" within the custody and control of a "public agency," provided that the document was within the scope of the Act. As a result, numerous documents, once unavailable to the general public, were open for almost anyone to inspect for almost any purpose. NKC and other commercial interests often took advantage of the Act in order to identify potential clients for direct-mail solicitation of business.
 
 
 3
 As of January 1, 1977, Kentucky began to require motorists involved in certain types of automobile accidents to file accident reports with the Kentucky Department of State Police. KY.REV.STAT.ANN. § 189.635 (Banks-Baldwin 1977). Motorists are required to disclose in these reports certain personal information including, but not limited to, the driver's full name, birth date, address, driver's license number (which is the same as his or her social security number), physical infirmities which restrict the license, the vehicle's registration and insurance, the vehicle's identification number, passengers' names and addresses, witnesses' names and addresses, the types of injuries sustained by the victims and what medical facilities the victims were taken to, the use of drugs or alcohol, any physical disability that contributed to the accident, any criminal violations involved, and other information, including telephone numbers. These reports were initially made available to the public, including NKC, pursuant to the Act. NKC would make copies of these reports in order to obtain the names and addresses of accident victims, which NKC would then use as part of its direct-mail efforts to solicit business.
 
 
 4
 In 1994, the Kentucky General Assembly amended § 189.635.[1] In its entirety, the language of the Amendment is as follows:
 
 
 5
 [A]ll other accident reports required by this section,[2] and the information contained in the reports, shall be confidential and exempt from public disclosure except when produced pursuant to a properly executed subpoena or court order, or except pursuant to subsection (6) of this section. These reports shall be made available only to the parties to the accident, the parents or guardians of a minor who is a party to the accident, and the insurers of any party who is the subject of the report, or to the attorneys of the parties.
 
 
 6
 (6) The report shall be made available to a news-gathering organization, solely for the purpose of publishing or broadcasting the news. The news-gathering organization shall not use or distribute the report, or knowingly allow its use or distribution, for a commercial purpose other than the news-gathering organization's publication or broadcasting of the information in the report. A newspaper, periodical, or radio or television station shall not be held to have used or knowingly allowed the use of the report for a commercial purpose merely because of its publication or broadcast.
 
 
 7
 On July 15, 1994, in conformity with the Amendment, the LFUCG stopped releasing the accident reports to the public. On October 6, 1994, NKC sued defendant Steve Ramey in his official capacity as custodian of the records for the LFUCG. NKC attacked the Amendment on First Amendment grounds, insisting that it violated its right to receive copies of the accident reports.
 
 
 8
 On January 23, 1995, NKC filed a motion for a preliminary injunction. After a hearing at which it heard arguments of counsel but took no evidence, the district court issued a memorandum opinion in which it held that the Amendment unduly restricted NKC's commercial speech rights and was unconstitutional.[3] The district court enjoined Ramey from enforcing the Amendment.
 
 II.
 
 9
 The narrow issue before us is the propriety of the district court's issuance of the preliminary injunction. We review a district court's decision to issue a preliminary injunction for abuse of discretion. Deckert v. Independence Shares Corp., 311 U.S. 282 (1940). Errors of law are considered an abuse of discretion. Golden v. Kelsey-Hayes Co., 73 F.3d 648, 653 (6th Cir.1996).
 
 
 10
 Ordinarily, our inquiry in an appeal of a preliminary injunction would focus on the four factors courts must balance when deciding whether to issue a preliminary injunction. Specifically, we would consider: (1) whether the party seeking the injunction has shown a substantial likelihood of success on the merits; (2) whether the party seeking the injunction will suffer irreparable harm absent the injunction; (3) whether an injunction will cause others to suffer substantial harm; and (4) whether the public interest would be served by the issuance of the injunction. See Southern Milk Sales v. Martin, 924 F.2d 98, 103 n. 1 (6th Cir.1991).
 
 
 11
 The record in this case, however, reveals that the district court did not undertake the required four-factor balancing of interests. Rather, after making a factual finding that an earlier preliminary injunction barring enforcement of this statute was then on appeal, the district court held that the statute is unconstitutional and, in an order captioned "Injunction," not "Preliminary Injunction," enjoined the statute's enforcement. The court did not follow the procedures provided by Rule 65 of the Federal Rules of Civil Procedure to consolidate the hearing on the motion for preliminary injunction with a trial on the merits, an avenue plainly available if the district court considered an expedited decision on the merits appropriate. As a result, the parties have not been afforded a full opportunity to present their cases, but the court, without benefit of a fully developed record, has squarely held that the statute at issue is unconstitutional.
 
 
 12
 In our view, this alone constitutes an abuse of discretion. No authority of which we are aware expressly authorizes a district court to proceed, as the district court did here, to reach the merits of this case as part of its ruling on a motion for preliminary injunction. Indeed, the Supreme Court has made it clear that because of the nature and purpose of preliminary injunction proceedings,[4] "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." University of Texas v. Camenisch, 451 U.S. 390, 395 (1981) (citations omitted).
 
 
 13
 Accordingly, we VACATE the injunction, and REMAND this case to the district court for further proceedings. We instruct the district court on remand carefully to develop the factual record and to address such issues, inter alia, as whether this statute should be analyzed as involving restriction on NKC's commercial speech, or whether the statute is more properly analyzed as involving simply a restriction on access to government-collected information, and if the latter, whether the press has any greater right of access to government records than has the public in general.
 
 
 14
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 15
 I agree that it was an abuse of discretion for the district court to hold the Kentucky statute unconstitutional without benefit of a fully developed record. My purpose in writing separately is to note a second reason why, in my view, the district court ought not to have granted relief in response to the plaintiff's motion for a preliminary injunction: I think the plaintiff failed to show a substantial likelihood of success on the merits of its claim that the denial of access to the public records in question abridged its freedom of speech in violation of the First Amendment.
 
 
 16
 As Judge Ryskamp recently pointed out in Babkes v. Satz, 944 F.Supp. 909, 911 (S.D.Fla.1996), citing Houchins v. KQED, Inc., 438 U.S. 1, 9 (1978), "there is no First Amendment guarantee of a right of access to government records...." The First Amendment is not a Freedom of Information Act; generally speaking, at least, the United States Constitution leaves it to the several states to decide whether and to what extent state records shall be opened to inspection by the public.
 
 
 17
 The Florida statute at issue in the Babkes case--like the Maryland statute at issue in Ficker v. Curran, No. WMN-96-2057 (D.Md. 10/21/96)--restricted the use to which information regarding traffic offenses could be put. The district courts held that the restrictions were unconstitutional. These decisions are not directly in point here, because neither the Florida statute nor the Maryland statute dealt with access to government traffic accident reports.
 
 
 18
 Kentucky's statute imposes restrictions on the use to which traffic accident reports may be put by a "news-gathering organization," but not by anyone else. Plaintiff Northern Kentucky Chiropractic--unlike one of the plaintiffs in another lawsuit where the constitutionality of the Kentucky statute has been challenged, see Amelkin v. McClure, No. 94-6161 (6th Cir. 1/9/96) (slip opinion at 4, 1996 WL 8112 at * 2)--does not claim to be a news-gathering organization, actual or prospective. As far as Northern Kentucky Chiropractic is concerned, therefore, the Kentucky statute purports to regulate access only. It does not purport to regulate the use to which the chiropractic firm can put such information as it may be able to obtain. On its face, in other words, the statute does not purport to regulate the firm's "speech."
 
 
 19
 It is doubtless true that by ending the practice of giving the general public access to accident reports, Kentucky made it much more difficult for Northern Kentucky Chiropractic to send targeted advertising materials to accident victims named in the reports. And if the Kentucky legislature had singled out advertisers such as Northern Kentucky Chiropractic for denial of access, a strong argument could be made that the statute should be analyzed as "a government erected obstruction to speech." See Lanphere & Urbaniak v. Colorado, 21 F.3d 1508, 1513 n. 2 (10th Cir.), cert. denied, 115 S.Ct. 638 (1994). The Kentucky statute does not single out advertisers, however; like the Louisiana statute at issue in DeSalvo v. Louisiana, 624 So.2d 897 (La.S.Ct.1993), cert. denied, 510 U.S. 1117 (1994), it "prohibits disclosure of state motor vehicle accident reports to anyone except a party to an accident, his or her representative, attorney and insurer, [and] the press...." Id. at 898 (emphasis supplied). As the Supreme Court of Louisiana observed in upholding the constitutionality of statutes of this type, "[a] less stringent test applies ... when the regulation does not flatly prohibit or restrict commercial speech because of its content but indirectly results in a stricture upon the flow of information...." Id. at 900.
 
 
 20
 Assuming, arguendo, that the constitutionality of the Kentucky statute ought to be analyzed under the test that would be applicable if Kentucky had chosen to withhold access only from those wishing to use the accident reports for commercial purposes, it seems to me that the Kentucky statute should still pass constitutional muster. See the well-reasoned majority opinion in Lanphere & Urbaniak, where the Tenth Circuit, using the analysis applied in Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557 (1980), and distinguishing Shapero v. Kentucky Bar Ass'n, 486 U.S. 466 (1988), upheld the constitutionality of a Colorado statute denying access to criminal justice records where the records were "sought for the purpose of directly soliciting business for pecuniary gain." 21 F.3d at 1510.
 
 
 21
 I recognize that there are decisions pointing the other way. See, e.g., Speer v. Miller, 15 F.3d 1007 (11th Cir.1994) (holding unconstitutional a Georgia statute that prohibited inspection or copying of law enforcement records for commercial solicitation) and Innovative Database Systems v. Morales, 990 F.2d 217 (5th Cir.1993) (holding unconstitutional a Texas statute prohibiting the use of accident report information for the purpose of soliciting business). But the Supreme Court's decision in Florida Bar v. Went For It, Inc., 115 S.Ct. 2371 (1995), upholding the constitutionality of a prohibition against personal injury lawyers sending targeted advertising to accident victims within a period of 30 days after the accident, may suggest somewhat greater sympathy on the part of the Supreme Court for the position taken by the Tenth Circuit in Lanphere & Urbaniak. My own view, in any event, is that the Tenth Circuit got it right.
 
 
 22
 RALPH B. GUY, Circuit Judge, concurring.
 
 
 23
 I agree that this matter needs to be remanded for the reasons set forth in Judge Batchelder's opinion. Unlike Judge Nelson, however, I have serious reservations about the constitutionality of the statute. Although the state does have a legitimate interest in protecting the privacy of its citizens relative to information they are compelled to divulge, the exception that allows the media to have access to this information makes the statute fatally flawed in my view. I hasten to add, however, that a fully developed record may convince me otherwise.
 
 
 
 [1]
 We refer to § 189.635 as "the Amendment," "the statute," or simply § 189.635
 
 
 [2]
 The language of the amendment applies to all accident reports except those filed in compliance with subsection (4), which requires that any person involved in an accident resulting in damage exceeding $500.00 in which no investigation is conducted by a law enforcement officer file a report with the Department of State Police. KY.REV.STAT.ANN. § 189.635(4) (Banks-Baldwin 1994)
 
 
 [3]
 The district court apparently judged the Amendment by the Supreme Court's Central Hudson test. Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York, 447 U.S. 557 (1980), although the opinion does not cite to that case or discuss it. The court simply held that the restriction was not supported by a substantial governmental interest, and therefore, the statute was unconstitutional
 
 
 [4]
 "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.... A party thus is not required to prove his case in full at a preliminary-injunction hearing." University of Texas v. Camenisch, 451 U.S. 390, 395 (1981)