**James CALDER, Plaintiff-Appellant,**

v.

**INTERNAL REVENUE SERVICE, and Lawrence B. Gibbs, Commissioner of Internal Revenue, Defendants-Appellees.**

No. 89-5508.

United States Court of Appeals,
Fifth Circuit.

Dec. 21, 1989.

David H. Donaldson, Graves, Dougherty, Hearon & Moody, Austin, Tex., for plaintiff-appellant.

Mary Frances Clark, Gary R. Allen, Chief Appellate Section, Karen L. Elias, U.S. Dist. Judge, Tax Div., David I. Pincus, Washington, D.C., for defendants-appellees.

Before WISDOM, JOHNSON and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

While researching the development of federal crime control policies, University of Texas at San Antonio Professor James Calder requested certain documents from the Internal Revenue Service (hereinafter IRS) pertaining to tax investigations of Al Capone. The IRS, determining that the request sought nondisclosable "return information," denied Calder's request. 26 U.S.C. § 6103.[1]

Calder, after exhausting his administrative remedies, brought suit under the Freedom of Information Act (FOIA) and the first and fifth amendments to the Constitution. Calder later dropped the FOIA claim and proceeded solely on the constitutional issues. Specifically, Calder argued that the IRS's denial of access to the materials violated his asserted constitutional right of access to government information as well as his fifth amendment right to equal protection under the laws. The equal protection claim was based on the pre–1977 access to the files granted several individuals.

The district court granted the IRS's motion for summary judgment on the ground that Calder has no constitutional or statutory right of access to Capone's IRS records. Calder has timely appealed the judgment to this Court. We affirm.

---

1. This section, effective January 1, 1977, provides that the term "return information" includes

a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with repect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense....
Section 6103(b)(2)(A).

Prior to the 1977 effective date of this section, the information on Capone was made available on several occasions. Several researchers took advantage of this availability and gained access to the records; these researchers then incorporated the information in books and other documents. Interestingly, the IRS promoted access to these records during the fiftieth anniversary of its Intelligence Division.

## DISCUSSION

In his brief to this Court, Calder argues that the first amendment creates a right of access to records in the hands of an administrative agency which have historically been available for public perusal.[2] Calder argues that section 6103 is unconstitutional as applied to him because it limits this alleged right of access to information held by an administrative agency, specifically, the records of Al Capone. Calder bases this argument on *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), and its progeny.[3]

█ Calder acknowledges that the cases in the *Richmond* line establish and define the scope of the first amendment right of access to criminal trials and certain criminal proceedings. *See, e.g., Gannett Co., Inc. v. De Pasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (pretrial suppression hearing); *Richmond, supra* (criminal trial); *Globe, supra* (criminal trial involving sex offenses and minors); *Press–Enterprise I* and *Press Enterprise II, supra* (transcripts of preliminary hearings). Calder acknowledges that the Supreme Court has not specifically addressed the question of a right of access to records which are in the hands of an administrative agency. Calder urges this Court to conclude that the reasoning behind the *Richmond* line mandates the conclusion that the right of access is not limited to criminal proceedings, but extends to other governmentally held information. We decline to do so, and hold that Calder has not established the existence of a constitutional right of access to the IRS records of Al Capone. The district court did not err in granting summary judgment in favor of the IRS.

In *Richmond,* the Supreme Court held that in the context of criminal trials, the first amendment prohibits the government from summarily closing the courthouse doors which stood open to the public prior to the adoption of the amendment. Chief Justice Burger traced the public character of criminal trials back to the time of the Norman conquest. He pointed out that "a presumption of openness inheres in the very nature of a criminal trial under our system of justice." *Richmond* at 573, 100 S.Ct. at 2825. In *Globe,* the Supreme Court articulated the features of criminal proceedings which implicate the first amendment right of access. Specifically, the Court pointed to the history of openness in criminal proceedings as well as to the significant role that access plays in the functioning of the judicial process. The Court also noted that openness in the context of criminal proceedings acts as a check on the judicial process while providing an appearance of fairness and providing therapeutic value to the community. It is questionable whether these reasons apply in other contexts.

Although the dicta in *Richmond* does indicate that the first amendment "prohibit[s] government from limiting the stock of information from which members of the public may draw.", *id.* at 576, 100 S.Ct. at 2827, Justice O'Connor has indicated that she "interpret[s] neither *Richmond Newspapers* nor the Court's decision [in *Globe* ] to carry any implications outside the context of criminal trials." *Globe* at 611, 102 S.Ct. at 2622 (O'Connor, J., concurring). In fact, no Supreme Court case has applied the two-tier analysis which looks for an history of openness and examines the significant role access plays in the judicial process to areas other than criminal proceedings.

█ In *Capital Cities Media, Inc. v. Chester,* 797 F.2d 1164 (3d Cir.1986), a newspaper challenged, on first amendment grounds, its denial of access to records of a state agency. The Third Circuit, citing

---

**2.** Calder has not briefed his fifth amendment argument, and we do not address that issue. *See Morrison v. City of Baton Rouge,* 761 F.2d 242, 244 (5th Cir.1985).

**3.** *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982);

*Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*Press–Enterprise I* ); *Press Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II* ).

*Houchins v. KQED, Inc.*, 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978), stated that such access was a matter for legislative determination and noted the complete absence of guidelines for the judiciary. Justice Stewart, quoted by the Court in *Houchins*, has noted that

> There is no constitutional right to have access to particular government information, or to require openness from the bureaucracy ... The public's interest in knowing about its government is protected by the guarantee of a Free Press, but the protection is indirect. The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act.

*Id.* at 14, 98 S.Ct. at 2596 (quoting Justice Stewart, "Or of the Press," 26 Hastings L.J. 631, 636 (1975)). Quite simply, the right to speak and publish does not carry with it an unrestricted license to gather information. *See Zemel v. Rusk*, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965).

Section 6103 creates the type of comprehensive legislative scheme discussed by the courts in *Houchins* and *Capital Media*. The determination of who should have access to particular government held information and what constitutes a legitimate use of such information is "clearly a legislative task which the Constitution has left to the political processes." *Houchins* at 12, 98 S.Ct. at 2595. The pre–1977 access to the files does not change this determination.

Even assuming that the two-tier analysis applies to the information and agency involved in the instant case, Calder has failed to demonstrate the requisite history of access. Calder points to persons who were allowed access to the specific file of Al Capone. This focus is much too narrow. The historic practice referred to in *Richmond* and its progeny "looked not to the practice of the specific public institution involved, but rather to whether the particular type of government proceeding had historically been open in our free society." *Capital Media* at 1175.

Calder cites to eight individuals who were allowed access to Capone's records prior to 1977. The record does not indicate,

however, that these records were available for casual scrutiny, or that the access allowed those eight individuals was unlimited. In fact, the type of IRS records at issue was not routinely available even prior to 1977. The legislative history of section 6103 indicates that Congress was concerned about interagency availability of such records; there is little mention of availability to individuals, presumably because such a practice was rare and sporadic. Such inconsistent government practice does not satisfy the "historical openness" prong of the *Richmond* analysis. The district court correctly concluded that Calder failed to demonstrate that there was a history of access to the files.

CONCLUSION

Calder has failed to demonstrate that he has been denied a constitutional right of access to the IRS records of Al Capone. The district court did not err in granting summary judgment in favor of the IRS. Consequently, we affirm.

AFFIRMED.