**UNITED REPORTING PUBLISHING CORPORATION, Plaintiff,**

**v.**

**Daniel LUNGREN, Attorney General for the State of California, et al., Defendants.**

**Civ. No. 96–0888B (AJB).**

United States District Court, S.D. California.

Nov. 27, 1996.

Guylyn R. Cummins, Ben P. Jones, Gray Cary Ware & Freidenrich, A Professional Corporation, San Diego, CA, for Plaintiff.

James K. Hahn, Frederick N. Merkin, Byron R. Broeckman, Los Angeles, CA, Linda A. Cabatic, Allen Sumner, Sacramento, CA, Ian Fan, San Diego, CA, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BREWSTER, District Judge.

This case presents a facial challenge to a provision of the California Public Records Act, California Government Code § 6254, as that provision was amended, effective July 1, 1996, pursuant to Senate Bill 1059. The Court, having reviewed the moving and opposing papers and the oral arguments of counsel hereby GRANTS plaintiff's motion for summary judgment and DENIES defendants' motions for summary judgment.

### I. Background

Prior to July 1, 1996, the California Public Records Act provided that "state and local law enforcement agencies shall make public ... [t]he full name, current address, and occupation of every individual arrested by the agency[.]" Cal.Gov.Code § 6254. This made arrestee addresses available to anyone for any purpose. Cal.Gov.Code § 6254(f) was amended, effective July 1, 1996, to prohibit the release of arrestee addresses only to people who intend to use those addresses for commercial purposes. Cal.Gov.Code § 6254(f)(3) provides that state and local law enforcement agencies shall make public:

> the current address of every individual arrested by the agency and the current address of the victim of a crime, where the requester declares under penalties of perjury that the request is made for a scholarly, journalistic, political, or governmental purpose, or that the request is made for investigation purposes by a licensed private investigator.... Address information obtained pursuant to this paragraph shall not be used directly or indirectly to sell a product or service to any individual or group of individuals, and the requester shall execute a declaration to that effect under penalty of perjury.

Plaintiff United Reporting Publishing Corp. ("United Reporting") is a private publishing service that has been providing, under the former version of this statute, the names and addresses of recently arrested individuals to its clients. These clients include attorneys, insurance companies, drug and alcohol counselors, religious counselors, driving schools, and others. The defendants remaining in this action are various state and local law enforcement agencies.

Plaintiff's complaint seeks declaratory judgment and injunctive relief pursuant to 42 U.S.C. § 1983 to hold the amendment to section 6254 unconstitutional under the First Amendment to the United States Constitution (first cause of action), and unconstitutional under the Fourteenth Amendment to the United States Constitution (second, third, and fourth causes of action).

Plaintiff United Reporting and defendants County of San Diego Sheriff's Department, California Highway Patrol, and Los Angeles Police Department have filed cross-motions for summary judgment.

## II. Issue

Is the amendment to Cal.Gov.Code § 6254 an unconstitutional limitation on plaintiff's commercial speech?

## II. Discussion

### A. Scope of First Amendment Protection

Courts have historically recognized a common law right, but not an absolute right, of access to certain government records, including judicial records. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–98, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978). In this case, this common law right has been supplanted by the California Public Records Act of 1968 which made public all arrest records of law enforcement agencies. It is the 1996 amendment to this statute which blocks access to addresses of arrestees to persons who intend to use this information for commercial purposes. The issue, therefore, is whether plaintiff is protected by an overriding federal constitutional right of access to this particular government information.

Courts have uniformly answered this question in the negative: there is no constitutional right, and specifically no First Amendment right, of access to all governmental records. *Houchins v. KQED, Inc.*, 438 U.S. 1, 9, 14, 98 S.Ct. 2588, 2593–94, 2596–97, 57 L.Ed.2d 553 (1978) ("This Court has never intimated a First Amendment guarantee of a right of access to all sources of information within government control.... [Accordingly], [t]here is no discernible basis for a constitutional duty to disclose, or for standards governing disclosure of or access to information"); *Lanphere & Urbaniak v. Colorado*, 21 F.3d 1508, 1511 (10th Cir.1994) (same); *Calder v. I.R.S.*, 890 F.2d 781, 783–84 (5th Cir.1989) ("the right to speak and publish does not carry with it an unrestricted license to gather information"); *Speer v. Miller*, 864 F.Supp. 1294, 1297–98 (N.D.Ga.1994). The First Amendment directly protects the expression of information already obtained; it does not guarantee access to the sources of information. *Houchins*, 438 U.S. at 10, 98 S.Ct. at 2594 ("reference to a public entitlement to information mean[s] no more than that the government cannot restrain communication of whatever information the media acquire—and which [the government] elect[s] to reveal"). As explained by the Supreme Court:

> There is no constitutional right to have access to particular government information, or to require openness from the bureaucracy.... The public's interest in knowing about its government is protected by the guarantee of a Free Press, but the protection is indirect. The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act.
>
> The Constitution, in other words, establishes the contest, not its resolution. Congress may provide a resolution, at least in some instances, through carefully drawn legislation. For the rest, we must rely, as so often in our system we must, on the tug and pull of the political forces in American society.

*Id.* at 14–15, 98 S.Ct. at 2596–97, (quoting Hon. Potter Stewart, "Or of the Press," 26

Hastings L.J. 631, 636 (1975)).[1]

■ The Court concludes that the First Amendment does not provide plaintiff with a blanket constitutional right of access to arrestee addresses; the state could constitutionally prevent everyone from having access to this information. This does not, however, foreclose plaintiff's claim. As previously outlined, the instant statute is an amendment to the California Public Records Act which makes all arrestee information public, but then limits access only to those who plan to use arrestee addresses in commercial speech. The amended statute states that "[a]ddress information obtained pursuant to this paragraph shall not be used directly or indirectly to sell a product or service to any individual or group of individuals[.]" Cal.Gov.Code § 6254(f)(3). Functionally, this is a limitation on commercial speech. The government is the only source of this information and by statute is disseminating it to everyone *except commercial users*. The government cannot denominate this a limitation on access in order to achieve a limitation on non-preferred speech. This limitation on access constitutes an indirect limitation on commercial speech.

Recently, two circuits held similar statutes limiting the right of access to government arrest information indirectly implicate First Amendment concerns because such statutes indirectly "punish" certain (commercial), but not all, uses of the information[2]. *Lanphere & Urbaniak v. Colorado*, 21 F.3d 1508 (10th Cir.1994), and *Speer v. Miller*, 15 F.3d 1007 (11th Cir.1994), *on remand*, 864 F.Supp. 1294 (N.D.Ga.1994)[3], both involved state statutes that denied commercial users access to criminal records.[4] In both cases, the courts ac-

1. Two exceptions have been crafted to the general rule that there is no First Amendment right of access to government information. First, the Supreme Court has found a constitutional right of public access *to criminal trials* and court proceedings. *See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575–78, 100 S.Ct. 2814, 2826–28, 65 L.Ed.2d 973 (1980) ("In guaranteeing freedoms such as those of speech and press, the First Amendment can be read as protecting the right of everyone *to attend trials* so as to give meaning to those guarantees."); *Gannett v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (no right to attend suppression hearing); *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (right to attend jury voir dire); *Associated Press v. United States Dist. Court*, 705 F.2d 1143 (9th Cir.1983) (right of access to pretrial criminal proceedings and pretrial documents).

Second, courts have found a First Amendment right of access to judicial records. *See United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985) (finding a common law right to inspect and copy judicial records); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 502 (1st Cir.1989) (finding a First Amendment right of access to records of criminal cases); *Associated Press*, 705 F.2d at 1145 (finding a right of access to pretrial documents); *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir.1986) (right of access to plea hearings and sentencing hearings).

Neither of these exceptions to the general *Houchins* rule assists plaintiff. Both of these exceptions are premised on the long tradition of open trials dating back to England and the colonial United States. The Third Circuit, in *Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164 (3rd Cir.1986), created a two prong test for determining whether the public has a constitutional right of access to judicial proceedings or documents.

First, there must be a tradition of access to these items, and second, public access must play a significant role in the functioning of the particular process in question. *Id.* at 1174. While there is a long tradition of access to documents placed in official court records, there has been no showing that there is a long tradition of public access to law enforcement blotter sheets and arrest records, or that the public has played a significant role in the arrest process.

2. There appears to be no Ninth Circuit authority on this issue.

3. The *Speer* decision of the District Court is after remand from the Eleventh Circuit which vacated a contrary first decision of the District Court. In vacating and remanding the District Court's first decision, the Eleventh Circuit stated "[a] mere reading of this statute indicates that it probably impinges upon Speer's commercial speech." *Speer v. Miller*, 15 F.3d 1007, 1010 (11th Cir. 1994).

4. In *Lanphere*, the state statute in question required the government custodian to "deny any person access to records of official actions and criminal justice records unless such person signs a statement which affirms that such records shall not be used for the direct solicitation of business for pecuniary gain." 21 F.3d at 1510–11. In *Speer*, the statute in question declared it "unlawful for any person to inspect or copy any records of a law enforcement agency to which the public has a right of access ... for the purpose of obtaining the names and addresses of the victims of crimes or persons charged with crimes ... for any commercial solicitation of such individuals or relatives of such individuals." 15 F.3d at 1009.

knowledged that there is no general First Amendment right of access to criminal justice records. *Lanphere*, 21 F.3d at 1512; *Speer*, 864 F.Supp. at 1297–98. Both courts, however, went on to conclude that the First Amendment was implicated by the respective state statutes. As explained by *Lanphere*, the First Amendment is implicated because a direct ban on access to information can serve as an indirect ban on the usage of such information in speech, and therefore can constitute impermissible content-based regulation of speech:

> Although criminal justice records themselves do not constitute speech, the Colorado Legislature has drawn a regulatory line based on the speech use of such records. [The challenged statute] disallows the release of records to those wishing to use them for commercial speech, while allowing the release of the same records to those having a noncommercial purpose. Because commercial speech is protected under the First Amendment (though it is accorded lesser protection than 'core' First Amendment speech), and because such speech includes direct mail solicitation, what we have in the end is a content-based restriction on protected speech.

21 F.3d at 1513 (citations omitted); *see Speer*, 864 F.Supp. at 1299; *see also Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983) (use tax on paper and ink levied only on producers of periodic publications singled out the press for differential treatment and was an unconstitutional indirect limitation on speech).

The Court concludes that the amended Cal.Gov.Code § 6254(f) is a content-based indirect limitation on commercial speech which implicates the First Amendment.

## B. *Central Hudson* Commercial Speech Test

Since First Amendment commercial speech interests are implicated by the amended Cal.Gov.Code § 6254, the statute must be subjected to the four part test set out in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447

U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980).

■ At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. [2] Next, we ask whether the asserted governmental interest is substantial. [3] If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and [4] whether it is not more extensive than is necessary to serve that interest.

*Id.* at 566, 100 S.Ct. at 2351.

### 1. Is Plaintiff's Commercial Speech Activity Lawful?

There is no contention that Plaintiff's proposed use of this information is misleading or is not a lawful activity.

### 2. Are the Governmental Interests Substantial?

■ The defendants advance two substantial government interests which they claim support this statute. The legislative history quotes Senator Peace as follows:

> From a law enforcement perspective, the processing of the requests puts a tremendous strain on already scarcely allocated time and resources. F[rom] a consumer perspective, this is an invasion of privacy. While these records are justifiably public in many ways, the unsolicited direct mail advertisements are unwarranted.

Legislative History (June 4, 1996 letter), p. 4. Both the *Speer* and *Lanphere* courts found that the governmental interest in protecting the privacy of arrestees was substantial. *Speer*, 864 F.Supp. at 1302; *Lanphere*, 21 F.3d at 1514–15; *see also Florida Bar v. Went for It, Inc.*, —— U.S. ——, —— – ——, 115 S.Ct. 2371, 2376–80, 132 L.Ed.2d 541 (1995) (upholding 30 day ban on direct mail attorney solicitations based on the government's substantial interest in protecting the privacy and tranquility of personal injury victims); *Carey v. Brown*, 447 U.S. 455, 471, 100 S.Ct. 2286, 2296, 65 L.Ed.2d 263 (1980) ("[t]he State's interest in protecting the well-

being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society"). With respect to the government's concern about the fiscal burden of producing arrestee information, the direct costs of duplicating would be paid by plaintiff, but the costs of aggregating and organizing all of the information and the labor involved in duplicating are presently borne by the law enforcement agencies. Given the strictures of governmental budgets, the government has an interest in minimizing these costs.

### 3. Whether the Restriction Directly and Materially Advances the Governmental Interests

■ To establish that the restriction on commercial speech advances the above-identified government interests in a direct and material way, the government body must demonstrate that the harms are real and that the restrictions will, in fact, alleviate those harms to a material degree. *Florida Bar,* — U.S. at ——, 115 S.Ct. at 2377.

■ First, it is doubtful that this amended statute will save defendants any money at all. The costs of gathering and preparing arrestee information will still be incurred under this statute because law enforcement agencies will still have to compile the identical arrestee data for journalists, government employees and other non-commercial users of the information. The additional costs of making copies for commercial users would be marginal, especially when they can be charged all of the costs of duplication. Moreover, under this statute the law enforcement agencies still have to compile and copy all arrestee information for commercial users except for addresses. The simple omission of addresses will not minimize law enforcement agency expenses.[5]

■ Second, the amended statute also fails to advance the state's interest in protecting the privacy and tranquility of its residents. In its most recent pronouncement on commercial speech, the Supreme Court upheld a statute prohibiting lawyers from sending direct mail solicitations to accident victims within 30 days of the accident. *Florida Bar,* — U.S. at ——, 115 S.Ct. at 2381. The asserted state interest behind the statute was to protect "the personal privacy and tranquility of [Florida's] citizens from crass commercial intrusion by attorneys upon their personal grief in times of trauma." *Id.* at ——, 115 S.Ct. at 2379. The Supreme Court concluded that the statute directly and materially advanced this interest by requiring attorneys to wait 30 days before sending direct mail solicitations to victims. *Id.*

The Supreme Court's holding in *Florida Bar* does not control the outcome in this case for two reasons. First, the ban at issue in *Florida Bar* only lasted for 30 days after the accident, whereas the ban on publication of arrestee addresses in section 6254(f)(3) is permanent. Permanent bans on attorney direct mail solicitation have been invalidated. *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); *Shapero v. Kentucky Bar Ass'n,* 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988). Second, the purpose of the statute in *Florida Bar* was to protect vulnerable victims from offensive attorney solicitation practices. Presumably accident victims would be most vulnerable immediately after the accident and would seldom require immediate legal representation, but once they have had a month to recover, they should be able to evaluate attorney solicitations more effectively. Arrestees, in contrast, potentially could need immediate legal assistance to prevent them from making self-incriminating statements, to help them obtain bail, and to prepare for any subsequent criminal proceedings. This interest so heavily outweighs any concern that arrestees may find such attorney solicitations offensive that the defendants' justification borders on the disingenuous.

The two courts that dealt with statutes substantially similar to Cal.Gov.Code § 6254(f) split on whether the statutes mate-

---

5. If this were the state's real concern, they could appropriately charge commercial users for the copies and use the additional revenue to cover the marginal cost increase, if any. Plaintiff has expressed its willingness to pay any additional costs incurred because of its information requests.

rially advanced the state's interest in protecting the privacy of its citizens. In *Lanphere*, the Tenth Circuit held that

> [t]he state's interest in protecting privacy is directly advanced when the State no longer allows access to names and addresses of those charged with misdemeanor traffic violations and DUI. Further, refusing access to such information reasonably directly advances the State's interest in lessening the danger of overreaching by solicitors where potential solicitation recipients may be particularly vulnerable.

21 F.3d at 1515.[6] The *Speer* court reached the opposite conclusion.

> This Court believes that the narrow and selective manner in which the Georgia statute attempts to further the asserted interest of protecting people's privacy betrays the state's true focus and its inability to serve the state's asserted interest. The State does not restrict all (or probably even most) possible invasions of a person's privacy. Anyone may access the records in question so long as they do not do so with an eye towards using the information for certain types of commercial solicitations. The media may peruse and report the records, academicians may employ them in their research, statisticians may gather their contents for inclusion in their computations, inventive entrepreneurs may use their contents for the commercial solicitation of individuals neither named nor related to persons named therein, curiosity seekers may browse through them in search of titillation, or personal enemies may even extract information from them for diabolical (yet otherwise lawful) purposes. Only entities intending to use the names and addresses of those mentioned therein to solicit those people or their relatives for commercial purposes are denied access. The restriction's exceedingly narrow scope betrays it as a statute designed not to protect privacy but, instead, to prevent solicitation practices. And as *Shapero* teaches, a person's privacy is not infringed by the solicitation, but by the solicitor's discovery of the information that leads to the solicitation.

> Accordingly, the Court finds that the Georgia statute does not directly advance the state's asserted interest because it advances that interest hardly at all and because it attempts to protect those named in the records primarily by preventing solicitations rather than by preventing significant access.

864 F.Supp. at 1302.

The Court agrees with the reasoning of the *Speer* court. It is hard to see how direct mail solicitations invade the privacy of arrestees. If they don't like the solicitation, they can simply throw it away. *See Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 72, 103 S.Ct. 2875, 2883, 77 L.Ed.2d 469 (1983) (the short though regular journey from mail box to trash can is an acceptable burden, at least as far as the Constitution is concerned). At worst, it could be somewhat embarrassing for them to receive a letter from an attorney offering services to them now that they are a 'suspected criminal.' It may also be embarrassing for arrestees to have their addresses published in newsletters, but it would only be marginally more embarrassing, if at all, than just having their name published. Further, the statute still allows their name and address to be published in newspapers, broadcast on television, and/or obtained by an employer or even an enemy. These are potentially much more pervasive invasions of privacy, yet the statute allows them. Moreover, United Reporting attaches affidavits from many arrestees stating that they do not feel that the solicitations invaded their privacy and that they found them helpful in obtaining legal representation or other services. Defendants filed no contrary affidavits. The *Speer* court appears correct that one of the real reasons behind the statute is to prevent the solicitations themselves because vulnerable people are lured into bad deals with lawyers. The statute may also have been intended to prevent

---

6. In *Lanphere*, the state statute in question required the government custodian to "deny any person access to records of official actions and criminal justice records unless such person signs a statement which affirms that such records shall not be used for the direct solicitation of business for pecuniary gain." 21 F.3d at 1510–11.

arrestees from obtaining counsel because law enforcement agencies find it easier to deal with arrestees who are not represented by counsel.[7] The Court concludes that the statute, rather than protecting the privacy of its citizens, actually hinders the ability of arrestees to obtain needed counsel and advice to deal with their legal problems.

Since Cal.Gov.Code § 6254(f)(3) does not directly and materially advance the state's asserted interests in minimizing costs and protecting the privacy of arrestees, it fails the third prong of the *Central Hudson* test.

### 4. Whether the Regulation is Narrowly Drawn

The final prong of the analysis is whether the statute is narrowly drawn. This test requires a 'reasonable fit' between the legislature's ends and the means chosen to accomplish those ends. *Florida Bar,* —— U.S. at ——, 115 S.Ct. at 2380. There is not a reasonable fit between the cost rationale and prohibiting access to commercial users of the information. The law enforcement agencies must still compile and reproduce the information for non-commercial users. They must still provide all information except for the addresses to commercial users. Moreover, commercial users can be charged fees for any additional costs incurred. The amendment is not narrowly drawn because it does not decrease expenses of law enforcement agencies.

Whether there is a reasonable fit between the privacy rationale and prohibiting access to commercial users of the information collapses into the same analysis as whether the statute directly and materially advances the state interest. Since the prohibition on commercial use of the information does not materially advance the state's interest in protecting the privacy of its citizens, there is not a reasonable fit between the legislature's means and ends.

Since Cal.Gov.Code § 6254(f)(3) is more extensive than necessary to accomplish its asserted purpose, it also fails the fourth prong of the *Central Hudson* test.

The Court therefore finds Cal.Gov.Code § 6254(f)(3) to be an unconstitutional limitation on commercial speech.

### C. Plaintiff's other causes of action

Since the Court finds Cal.Gov.Code § 6254(f)(3) unconstitutional as an impermissible limitation on commercial speech, the Court does not reach plaintiff's other causes of action.

### III. Conclusion

For the foregoing reasons, the Court finds that Cal.Gov.Code § 6254(f)(3) is an impermissible restriction on commercial speech which violates the First Amendment. For this reason, the Court hereby GRANTS plaintiff's motion for summary judgment and DENIES defendants' motions for summary judgment.

Plaintiff shall lodge a proposed judgment of declaratory and injunctive relief within twenty days with counsel and the Court. Defendants shall have ten days to object to the form of the judgment, whereupon it shall stand submitted for Court revision and signature.

IT IS SO ORDERED.

---

**7.** The Court notes that it was state and local law enforcement agencies and district attorneys' of-

fices which proposed this amendment to § 6254.