**BYRON M., Plaintiff,**

**v.**

**CITY OF WHITTIER and Whittier Police Dept., Defendants.**

**No. CV 98–8678 ABC (MANx).**

United States District Court, C.D. California.

Dec. 4, 1998.

---

**3.** It is clear to the Court that the Defendants are entitled to proceed with the notification authorized in § 290(m)(1)(A) and (B).

Paul Wallin, Wallin & Klarich, Santa Ana, CA, for plaintiff.

Bruce D. Praet, Ferguson, Praet & Sherman, Santa Ana, CA, for defendants.

## ORDER RE: PRELIMINARY INJUNCTION

COLLINS, District Judge.

Plaintiff's Motion for a Preliminary Injunction came on regularly for hearing before this Court on December 4, 1998. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that Plaintiff's Motion is DENIED.

### I. Background

On November 3, 1998, Plaintiff filed his first amended complaint for a temporary restraining order to prevent Defendants from distributing personal information about Plaintiff, pursuant to Cal.Penal Code § 290. This statute permits personal information regarding convicted sex offenders to be released under certain circumstances. At the November 10, 1998 hearing, the Court granted Plaintiff's Motion for a Temporary Restraining Order only as to the distribution of Plaintiff's personal information to the media.[1] The Court raised sua sponte the issue as to whether or not "advise the public" terminology under § 290(n) authorizes publication to the media. Because the Court could not determine whether the Plaintiff had shown the possibility of irreparable injury as to the issue of release of information to the media, the Court requested the parties to brief this single issue for purposes of the preliminary injunction motion.

On November 17, 1998, Plaintiff filed his motion for preliminary injunction. On November 24, 1998, Defendants filed their Opposition.

### II. Discussion

#### A. Standard

■ A court may issue a preliminary injunction if it determines: (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and depending on the nature of the case, (4) the public interest favors granting relief. *See International Jensen v. Metrosound U.S.A.*, 4 F.3d 819, 822 (9th Cir.1993).

■ Under the "alternative standard," a party may obtain a preliminary injunction, by demonstrating either: (1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted; or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. *Id.* "The alterna-

---

1. The Court notes that media attention has already been focused on Plaintiff in this issue, not from efforts by the City of Whittier, but from Plaintiff's own lawsuit which was erroneously not filed under a pseudonym.

tive standards are not separate tests but the outer reaches of a single continuum." *Id.* (quotation omitted). Essentially, the trial court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. Schwarzer & Tashima, *Federal Civil Procedure Before Trial,* at 13:39.

## B. Analysis

■ In its November 10, 1998 Order regarding Plaintiff's motion for a temporary restraining Order, the Court held that if Defendants did not have the right to publish the information listed in § 290(m)(2)(A)–(N) to the media under § 290(n), then publication could constitute irreparable injury. Consequently, the Court will limit its analysis to the meaning of § 290(n)'s "advise the public" terminology and whether it precludes publication of personal information of a high-risk sex offender in the media.[2]

Given that Plaintiff spends much of his brief rearguing many of the issues the Court had ruled on previously, Plaintiff's arguments as to the meaning of "advise the public" are difficult to discern. However, Plaintiff appears to aver that advising the public may not be construed to permit local media notification because 1) these actions are contrary to the statute's text and 2) dissemination must be limited by geographic scope related to the threat posed by the offender. Plaintiff makes no arguments on the statute's interpretation based on legislative history. The Court finds Plaintiff's contentions meritless.

■ Statutory interpretation begins with considering the language of the statute itself. "Where the plain meaning of a provision is unambiguous that meaning is

controlling, except in the 'rare case [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.'" *Almero v. INS,* 18 F.3d 757, 760 (9th Cir. 1994) (quoting *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Plaintiff argues that nothing in § 290(m) permits dissemination of Plaintiff's registrant information to the media, or to be posted in the neighborhood. The Court need not stretch the statute's language to find that media dissemination is allowable under the words of 290(m). The statute itself is broadly written, permitting registrant information to be provided to "persons, agencies, or organizations the offender is likely to encounter." The statute then provides that such entities "includ[e], but [are] not limited to," particular groups that may be at risk, such as schools and day care establishments and "other community members at risk." § 290(m)(1)(A)–(B).

Contrary to Plaintiff's assertion, it is by no means clear that "[I]f the legislature had intended dissemination to occur to the media ... it would have included this language in the statute." Rather, the statute's language is quite broad, and is inclusive rather than exclusive, merely providing a list of suggested parties to whom the information may be provided. As will be discussed below, there are geographic limits on the distribution of information, but the text cannot be read to include a blanket exclusion of all media distribution.

As with Plaintiff's motion for a temporary restraining order, Plaintiff's motion for a preliminary injunction consistently confuses 290(m), the provisions which apply to convicted serious sex offenders with 290(n), which applies to high-risk sex of-

---

2. Despite the Court's explicit language in both its Order and at oral argument disposing of Plaintiff's constitutional arguments that *Penal Code* § 290 violates the ex post facto, double jeopardy, or due process clauses as well as Plaintiff's argument that Defendants imposed the statute in an arbitrary and capricious

manner, Plaintiff seeks to rebrief these issues in its preliminary injunction brief. Because the Court strictly limited the scope of the briefing for the preliminary injunction, the Court will not revisit these prior holdings in this motion.

fenders, like Plaintiff. The standards for the two categories are different, making the language under 290(m), even if it were construed to prevent dissemination to the media, irrelevant to Plaintiff's case. Under § 290(m), a police officer may only disseminate a registrant's information when he or she "reasonably suspects ... that a child or other person may be at risk from a sex offender."

■ In contrast, § 290(n) provides that, "In addition to the procedures set forth elsewhere in this section, a designated law enforcement entity may advise the public of the presence of high-risk sex offenders in its community pursuant to this subdivision." Plaintiff argues that the plain meaning of 290(n) does not negate the reasonable suspicion standard of 290(m) required before any public dissemination occurs. The Court does not agree. The plain language makes this provision "in addition to" any procedures the police or other officials could have used to disseminate information about a sex offender, but the heightened risk presumably posed by those with more violent or extensive criminal backgrounds [3] obviates the need for the reasonable suspicion requirement necessary for those who have a less serious criminal history.[4]

Not only does 290(n) have a separate standard for reporting any information, it also sets forth different limitations on the scope of distribution. The requirement of 290(m) that information be disseminated to those entities an offender "is likely to encounter," does not apply to Plaintiff because he falls under the category of high-risk sex offenders. The statute's text does not apply the same geographic limit to high-risk sex offenders, and the Court declines to follow Plaintiff's only argument that, "If subsection (n) was intended to negate the reasonable suspicion identified in subsection 290(m), the legislature would have so clearly stated." By using different language and different sections to apply to the different categories of sex offenders, the legislature did "clearly state" its intention to negate the reasonable suspicion requirement. Indeed, were the Court to construe the statute otherwise, there would be no difference between the statute's treatment of sex offenders and high-risk sex offenders.

---

3. The statute limits those considered high-risk offenders to those who have the most extensive criminal history. The group includes those who have committed a serious sex offense under § 290.4(a)(i) as well as meets the following criteria:

(i) Has been convicted of three or more violent sex offenses, at least two of which were brought and tried separately.
(ii) Has been convicted of two violent sex offenses and one or more violent nonsex offenses, at least two of which were brought and tried separately.
(iii) Has been convicted of one violent sex offense and two or more violent nonsex offenses, at least two of which were brought and tried separately.
(iv) Has been convicted of either two violent sex offenses or one violent sex offense and one violent nonsex offense, at least two of which were brought and tried separately, and has been arrested on separate of occasions for three or more violent sex offenses, violent nonsex offenses, or associated offenses.
(v) Has been adjudicated a sexually violent predator pursuant to Article 4 (commencing with Section 6600) of Chapter 2 of Part 2 of Division 6 of the Welfare and Institutions Code.
Cal.Penal Code. § 290(n)(1)(A).
Plaintiff in this case was convicted of forcible rape (a violent sex offense) in 1970. He was paroled from prison in 1974. In 1981, he was again convicted of two counts of forcible rape (a violent sex offense), three counts of false imprisonment and two counts of attempted sexual perversion (both violent nonsex offenses).

4. If the plain meaning leaves any doubt, then the legislative history resolves this question squarely in favor of eliminating the reasonable suspicion standard for high-risk offenders. The legislative findings state that, "public release of specified information" should be performed with regard to "certain more serious sex offenders, and that 'community notification regarding high-risk sex offenders should occur.'" The legislature's language makes clear that the reasonable suspicion standard which distinguishes among the serious sex offenders is inapplicable in the context of high-risk offenders.

Because § 290(n) does not define what it means by "advise the public" or "community," however, the Court's analysis cannot end with the plain meaning of the statute. The Court must also consider the legislative history behind the statute in order to determine whether including the media is contrary to the intent of the statute. Plaintiff cites absolutely no authority to suggest that the scope of the statute was not intended to include distribution of information to the local media. The Court finds ample support for Defendants' contention that distribution of a high-risk offender's information to media is permissible.

The Legislature's findings support the wider release of information regarding high-risk offenders. The findings state, for instance, that "This policy of authorizing the release of necessary and relevant information about serious and high-risk sex offenders to *members of the general public* is a means of assuring public protection and shall not be construed as punitive." *See* § 290, Historical and Statutory Notes at 157 (West 1988 & Supp.1998).

When balancing similar privacy concerns against the public's right to information, the legislature has consistently included the news media when it permitted certain personal information to be distributed to the "public." The California Public Records Act has interpreted dissemination to the "general public" as permitting disclosure to the news media. *Matter of Hearst's Estate,* 67 Cal.App.3d 777, 782, 136 Cal.Rptr. 821 (1977).

The legislature permitted broad definitions of the "public" with regard to the California Public Records Act, even though, as with § 290, the legislature was "mindful of the right of individuals to privacy." Cal.Gov.Code. § 6250 (legislative findings). Nonetheless, the legislature defined "member of the public" expansively to include "any person" which it defines as "any person, corporation, partnership, limited liability company, firm, or association." § 6252(f), (c). Any news organization would certainly fall under this definition of the public. Moreover, in provisions of the statute which limit access to certain information, such as addresses of arrestees,[5] journalists are explicitly included in the list of those who may receive the information. Cal.Gov. Code § 6254(f)(3).

Instead of drawing on any legislative history of California's version of Megan's Law, Plaintiff relies on other state statutes to argue that the statute must include geographic limitations on the scope of dissemination. The Court agrees with Plaintiff's general assertion: that a statute must take precautions against undue dissemination. This position is consistent both with the Ninth Circuit's decision in *Russell v. Gregoire,* 124 F.3d 1079, 1093 (9th Cir. 1997) and with the California law. The Court does not agree, however, that distribution to the local media violates this requirement.

The Court's decision here is largely determined by *Russell.* In that case, the Ninth Circuit held that even if there were a right to privacy in data compilations (which the Ninth Circuit did not find), the Washington Megan's Law statute, which requires that dissemination occur only "within a narrow geographic area," *Russell,* 124 F.3d at 1082, contains adequate safeguards against undue dissemination. Notably, even under this standard, the Washington statute permits, and the Ninth Circuit upheld, the policy of dissemination to the local media of high-risk sex offend-

---

**5.** Plaintiff cites *United Reporting Publishing Corp. v. Lungren,* 946 F.Supp. 822 (S.D.Cal. 1996), to support the contention that, "information compiled by police agencies are (sic) not public." Plaintiff provides the Court no pin cite for this information, and the Court's own reading of the case reveals that Plaintiff's statement completely misses the point of the *United Reporting* decision. The Court stated that "there is no constitutional right ... of access to all governmental records," but noted that this did not settle the question because a California statute, namely the California Public Records Act, makes "all arrestee information public." *Id.* at 824–25.

ers' registrant information. *Id.* at 1082. Given the Ninth Circuit's ruling on the privacy issue with regard to the local media, Plaintiff's citation of other court decisions to the contrary, such as *Rowe v. Burton,* 884 F.Supp. 1372, 1385 (D.Alaska 1994)[6] or *State v. Myers,* 260 Kan. 669, 923 P.2d 1024, 1030 (1996), are irrelevant.

The California statute includes similar protections to the Washington statute. Section 290(n) permits dissemination only to the "public ... in [a designated law enforcement entity's] community." As the Defendants correctly point out, "Neither Defendants nor California's 'Megan's Law' have ever contemplated dissemination of information regarding 'high-risk' sex offenders beyond the geographical area where Plaintiff is likely to encounter new victims." Opp'n at 5. Thus, the statute follows the limitations Plaintiff argues other courts have required.[7]

Finally, the nature of the information released under § 290 cannot be considered an invasion of privacy. As noted above, the Ninth Circuit held there was no invasion of a constitutional right to privacy where the Washington state Megan's Law statute permitted registrant information, including the offender's photographs and fingerprints, among other personal information, to be provided to the local news media in the case of high-risk offenders. *Russell,* 124 F.3d at 1082–83.[8]

Because Plaintiff has not demonstrated that the plain meaning or legislative history of § 290 preclude dissemination of certain information about high-risk sex of-

fenders to the media, the Court finds that Plaintiff has not demonstrated irreparable injury. Consequently, there is no reason to extend the temporary restraining order by granting a preliminary injunction with regard to distribution of the information list in § 290(m)(2)(A)–(N).

### III. Conclusion

For all of the reasons set forth above, the Court hereby ORDERS that Plaintiff's motion for a preliminary injunction is DENIED.

**SO ORDERED.**

---

6. The Ninth Circuit noted that *Rowe* was an exception to the general rule that "registration provisions have overwhelmingly been sustained as constitutional by other courts." *Russell,* 124 F.3d at 1089.

7. To support their dissemination limitation argument, Plaintiff relies heavily on the New Jersey Supreme Court's analysis of the New Jersey Megan's Law statute in *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367. (1995). However, the New Jersey court's conclusion that a federal constitutional right to privacy was implicated by notification does not follow the

Ninth Circuit's analysis in *Russell.* Moreover, even the Second Circuit has disputed the New Jersey court's interpretation of this point. *See E.B. v. Verniero,* 119 F.3d 1077, 1103 n. 23 (3d Cir.1997).

8. With regard to Plaintiff's address, the issue is moot in this case because Plaintiff attached a copy of a letter including his own address when he filed his Ex Parte Application, so the media had access to this information without dissemination by the City of Whittier or the Whittier Police Department.